IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON VANDEN HEUVEL, on behalf
of himself and all others similarly situated,

            Plaintiff,

v.                                     CIVIL ACTION NO. 3:16-1839

NAVY FEDERAL CREDIT UNION,
CUNA MUTUAL GROUP, and
CUNA MUTUAL INSURANCE AGENCY, INC.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants CMFG Life Insurance Company, CUNA Mutual Insurance Agency, Inc., and Navy Federal Credit Union's Joint Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). ECF No. 23. For the following reasons, the Court **GRANTS** the motion and **TRANSFERS** this action to the Eastern District of Virginia.

**I.
FACTUAL AND
PROCEDURAL BACKGROUND**

Plaintiff Jason Vanden Heuval filed this punitive class action in the Circuit Court of Mason County, West Virginia, against Defendants Navy Federal Credit Union (NFCU), CUNA Mutual Group (CMFG Life),[1] and CUNA Mutual Insurance Agency, Inc. (CMIA). Thereafter, Defendants removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C.

---

[1] According to Defendants, Plaintiff incorrectly sued CUNA Mutual Group as it is merely a trade name for CMFG Life Insurance Company (CMFG Life) and its affiliates.

§ 1332(d), and because complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332(a), with supplemental jurisdiction over the remaining purported class members under 28 U.S.C. § 1367. Following removal, Defendants filed motions to dismiss, a motion to strike, and the joint motion to transfer. As this Court finds that transfer is warranted, it does not address the remaining motions.

In the Amended Complaint, Plaintiff asserts that he "is a current resident of Texas and a former resident of West Virginia." *Am. Compl.* at ¶15, ECF No. 1-1. While working for HQ Aero Management, Inc. (HQ Aero), located in the Northern District of West Virginia,[2] Plaintiff opened a credit card account, obtained a personal loan, and financed a boat with NFCU. *Id.* at ¶¶70-73. As there are no NFCU branches in West Virginia, Plaintiff states he called from West Virginia to a NFCU branch office located in Winchester, Virginia to open the accounts. *Id.* at ¶74. In conjunction with the accounts, Plaintiff asserts he paid premiums for Payment Protection Plans (PPPs) through NFCU, which guaranteed the loans if he lost his job. *Id.* at ¶¶2, 5, & 75.

The PPPs are administered by CMIA. *Defs.' CMFG Life Ins. Co., CUNA Mut. Ins. Agency, Inc., and Navy Fed. Credit Union's Mem. of Law in Supp. of Joint Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(A)*, at 1-2, ECF No. 20. Plaintiff alleges that, when he lost his job with HQ Aero in 2014, he made claims against the PPPs. *Am. Compl.* at ¶¶5-6. However, his claims

---

[2]Although not specifically stated in the Amended Complaint, Defendants assert that HQ Aero is located Bridgeport, West Virginia. *See Decl. of Amy Derifield*, at ¶10 (Apr. 4, 2016), ECF No. 23-2. Plaintiff has not disputed this statement, and he agrees that HQ Aero is within the Northern District. *See Pl's. Opposition to Defs.' Mot. to Transfer*, at 4-5, ECF No. 31 (stating that HQ Aero's location is in the Northern District of West Virginia).

were denied because Defendants determined he was a temporary employee. *Id.* at ¶¶6-7. Plaintiff disputes that he was a temporary employee and argues that the benefits were wrongfully denied.

## II.
## DISCUSSION

As this Court's jurisdiction is based upon removal, the general removal statute controls venue. *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665–66 (1953) ("The venue of removed actions is governed by 28 U.S.C. § 1441(a)," and the general venue statute found in 28 U.S.C. § 1391 "has no application to . . . a removed action."). The general removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As this case was filed in the Circuit Court of Mason County, West Virginia, and removed to this district, venue in this district is proper under § 1441(a).

Although venue in this district is not disputed, Defendants jointly move to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). This statute permits a district court to transfer a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). It is the moving party's burden to show that the convenience of the parties and the interests of justice weigh in favor of transferring the action. *Forte v. Bank of Am.*, Civ. Act. No. 3:13-33025, 2014 WL 4656126, *1 (S.D. W. Va. Sept. 15, 2014) (citation omitted). In deciding whether a case should be transferred pursuant to § 1404(a), a court first must consider whether the action "might have been brought" in the other district. 28 U.S.C. § 1404(a). If so, the Fourth Circuit has established four factors that a district court should consider in deciding motions to transfer under § 1404(a): "(1) the weight accorded to

plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted).[3] The ultimate decision whether a particular case should be transferred under § 1404(a) is within the district court's discretion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Applying the first factor to this case, the Court recognizes that a court ordinarily must give great weight to the plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, in this case, the only connection alleged in Plaintiff's Amended Complaint to this district is that Defendants do business in Mason County, West Virginia, which is within this district. *Am. Compl.* at ¶¶ 18 & 20. There are no allegations in the Amended Complaint that Plaintiff lived in the Southern District of West Virginia, worked in the Southern District of West Virginia, or conducted any business with Defendants in the Southern District of West Virginia. In fact, Plaintiff states in his Amended Complaint that he "is a current resident of Texas[.]" *Id.* at ¶15. Although Plaintiff now claims in his Response that he actually is a citizen of West Virginia, it appears clear that, even if true, he does not reside in the Southern District of West Virginia. Instead, the voter registration card he attached in support of his claim indicates he is registered to vote in Clarksburg, which is in the Northern District of West Virginia. In addition, he

---

[3]Prior to the Fourth Circuit's decision in *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund*, the courts in this district commonly employed a slightly more detailed list of factors in deciding a motion to transfer: "(1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." *AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994). These factors remain valuable considerations under the more general categories set forth by the Fourth Circuit.

indicates in his Amended Complaint that, prior to this move to Texas, he lived in Clarksburg.[4] *Id.* at ¶94. Therefore, the Court finds that despite Plaintiff's decision to file his action within this district, his connection with the district appears nonexistent. Thus, the Court applies Plaintiff's choice of forum with less force than it would had if he had filed in his home forum. *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" (quoting *Piper Aircraft Co.,* 454 U.S. at 255–256)).

Turning to the second factor, the Court finds that Plaintiff has failed to show that there is any evidence or witnesses located in this district. Plaintiff argues, however, that the location of documents is irrelevant because they are subject to electronic discovery and can be reviewed anywhere. Although the Court agrees with Plaintiff that it is likely most of the documentary discovery will be conducted electronically, to the extent there is discovery that cannot be exchanged electronically, none is located in this district. Thus, the Court finds the access to evidence tips slightly in favor of transfer.

With respect to witnesses, Plaintiff argues any relevant witnesses from his former employer HQ Aero are located in the Northern District of West Virginia and cannot be subpoenaed

---

[4]Defendants challenge Plaintiff's West Virginia citizenship based upon the allegations in the Amended Complaint. Defendants also point out that Plaintiff has failed to provide any sworn declaration that he is a citizen of West Virginia and, instead, relies upon an unauthenticated voter registration card.

to appear in the Eastern District of Virginia. In addition, Defendant CMIA's witnesses are located in Iowa and Texas. Therefore, they will have to travel regardless of whether this case is litigated in this district or the Eastern District of Virginia. Lastly, Plaintiff asserts Defendants have failed to show that it would be truly inconvenient for any NFCU witnesses to travel to this district from Northern Virginia. In fact, Plaintiff states his contact was with a NCFU branch office located in Winchester, Virginia, which is in the Western District of Virginia. Thus, any witnesses from the branch office also would have to travel to the Eastern District if the case was transferred there. Plaintiff further asserts that, if undue inconvenience is shown, he is willing to schedule depositions and take video or *De Bene Esse* depositions in Northern Virginia to prevent travel to West Virginia. Therefore, Plaintiff argues this issue does not support transfer.

Upon consideration, it is obvious that potential witnesses reside in a variety of jurisdictions and there is a likelihood that some witnesses will be inconvenienced regardless of where this case is litigated. Likewise, there is the potential that some witnesses may be beyond the subpoena power of a particular court. Nevertheless, it also is clear that there are no witnesses residing in this district. *See Decl. of Sally S. Leatherland* (Mar. 31, 2016) and *Decl. of Amy Derifield* (Apr. 4, 2016), ECF No. 23-1 & -2 (both declaring they are unaware of any witnesses residing within this district). Thus, every witness will need to travel to this district if they are called to testify. Although Plaintiff asserts he is willing to take depositions of those who may be unduly inconvenienced by travel, the Court gives this offer little weight because Defendants may want those witnesses to appear in person to testify. For those witnesses, Plaintiff's offer does not eliminate the problem. Therefore, under these circumstances, the Court finds convenience of the witnesses weighs in favor of transfer.

Turning next to the convenience of the parties, the Court gives this factor little weight to either side. Obviously, Plaintiff does not consider it inconvenient for him to appear in the Southern District of West Virginia because he filed his action here. Nevertheless, the Court finds little difference in any burden experienced by Plaintiff if he has to travel to the Eastern District of Virginia as opposed to the Southern District of West Virginia. With respect to Defendants, all allegedly do business in this district so it is not "unduly" burdensome for them to appear. The Court recognizes, however, that there is some burden to Defendants because they are not headquartered here and their corporate representatives may need to travel. Nevertheless, the CMFG Life/CMIA Defendants will have to travel irrespective of whether this case is in this district or the Eastern District of Virginia. In addition, the Court finds Defendant NFCU has failed to demonstrate any burden it may experience is sufficient enough to tilt this factor in its favor. Therefore, given that neither side has presented evidence showing it would be unduly burdened in either location, the Court finds this factor is neutral.

Lastly, in considering the interests of justice, the Court finds that this factor favors transfer. This broad factor "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Bd. of Trs., Sheet Metal Workers Nat'l Fund*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988). Specifically, it "encompasses public interest factors aimed at systemic integrity and fairness." *Lycos, Inc. v. TiVo, Inc.*, 499 F.Supp.2d 685, 695 (E.D. Va. 2007) (internal quotation marks and citation omitted). As to systemic integrity "judicial economy and the avoidance of inconsistent judgments" is "[m]ost prominent." *Byerson v. Equifax Information Servs., LLC*, 467 F. Supp.2d 627, 635 (E.D. Va. 2006) (citation omitted). "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home,

knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (citation omitted).

Here the parties do not argue that there is a risk of inconsistent verdicts, but Defendants do argue that moving the case to the "rocket docket" in the Eastern District of Virginia will likely resolve this case faster based upon comparing the average civil statistics for both districts. Defendants also argue that Virginia has a more significant interest in this case because it involves a nationwide class of NFCU's members, NFCU is a prominent Virginia citizen, and Virginia law applies under a choice of provision in the PPPs. In response, Plaintiff only insists that this Court should not rely upon a "rocket docket" as the sole reason to transfer venue. Although this Court can resolve this case in a timely fashion, the Court agrees with Defendants that the other considerations weigh in favor of transfer in the interests of justice.

## III.
## CONCLUSION

Accordingly, balancing the above factors, the Court finds Plaintiff's choice of forum is substantially outweighed in favor of transfer and justice is best served by having this case proceed in the Eastern District of Virginia. Therefore, the Court **GRANTS** Defendants' Joint Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     December 7, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE